IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LILLIANNA A. STEVENS,          :
                               :
    Plaintiff,                 :
                               :
    v.                         :      CIVIL ACTION FILE
                               :      NO. 13-CV-873-SCJ
CITY OF FOREST PARK,           :
GEORGIA and DWAYNE HOBBS,      :
in his individual capacity,    :
                               :
    Defendants.

## ORDER

This matter is before the court on Defendants' motion for summary judgment [37]; the Report and Recommendation of Magistrate Judge Russell G. Vineyard [54]; Defendants' objections thereto [56]; and Plaintiff's objections thereto [57].

**I.  Background**

Plaintiff, Lillianna Stevens, filed suit against Defendants, City of Forest Park and Dwayne Hobbs, Forest Park Chief of Police, alleging claims of race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and denial of her rights under the Equal Protection Clause via 42 U.S.C. § 1983.

The court recounts the facts here only to the extent necessary to consider the parties' objections. In his Report and Recommendation, Magistrate Judge Vineyard thoroughly discussed the facts as adduced by the parties in the course of briefing Defendants' motion

for summary judgment. The court presumes familiarity with the detailed discussion in the Report and Recommendation.

Plaintiff Stevens, a Hispanic female, began working as a senior police officer with the City of Forest Park Police Department in late 1992. During the relevant time period, Plaintiff was a Captain with the police force. Major Christopher Matson, a Caucasian male, served as Plaintiff's supervisor. Chief Dwayne Hobbs, a Caucasian male, was the highest ranking member of the department and was responsible for making final recommendations to City Manager, John Parker, as to whether an officer's employment should be terminated.

During the course of Plaintiff's employment with the department, she received numerous counseling and disciplinary actions for her inability to communicate with fellow officers in an appropriate manner. *See* Report and Recommendation, at 6-24. These matters ranged from letting personal feelings about fellow officers compromise her law enforcement duties to falsely claiming she did not receive email requests from fellow officers. She was warned that these problems would not be tolerated and "may be cause for a reduction in rank or termination." *Id.* at 7 n.7. During the course of investigating one of these problems, Major Matson and Colonel Orr became concerned about Plaintiff's fitness for duty as she behaved in a "bizarre and volatile manner" including "crying, screaming profanities, rocking back and forth, and making her hands into 'claws' to demonstrate how she believed she was being 'picked on'" by fellow officers. *Id.* at 9 n.9. Major Matson directed Plaintiff to meet with the department's consulting psychologist, Dr. Steve Sampson. Dr. Sampson reported

that he was unable to get Plaintiff to take any responsibility for the difficulties she was having with peers and subordinates and she would likely continue to have the problems because she could not see how she was contributing to them. *Id.* at 12. Plaintiff was again warned that any further discipline or counseling could lead to termination of her employment. *Id.* at 13.

The parties focused on two incidents in particular as they led up to the final confrontation between Plaintiff and the Department. On February 23, 2012, Plaintiff was counseled and received written discipline for an incident in which she advised a Georgia Bureau of Investigation officer during a reference check of an officer formally employed by the Forest Park Police Department, that the former officer had once attempted to grab Plaintiff's chest in a sexual manner. *Id.* at 10-11. Plaintiff had never reported this alleged behavior while the former officer was employed by Forest Park. Plaintiff was disciplined because her actions were perceived to be in violation of Chief Hobbs's General Order #31 which provides that employees of the Police Department must give accurate and truthful information about former employees during reference checks.

On August 9, 2012, Officer Richie Olascoagoa, one of Plaintiff's subordinates, was involved in a motor vehicle accident in which his patrol car sustained damage. Plaintiff was responsible for investigating the accident to determine whether it would be "chargeable" or not to Officer Olascoagoa. *Id.* at 13-18. Plaintiff contacted Lieutenant Delk told him the accident was non-chargeable, and asked him to complete an accident review for her, which

3

he refused to do unless all the necessary paperwork was completed. Plaintiff then went to three administrative sergeants, told them the accident was non-chargeable and minimized to them the damage done to the patrol car by stating that Officer Olascoagoa had only backed over a "little piece of metal." Based on Plaintiff's oral representations and without any of the supporting documentation or photos of the accident, the three sergeants signed off on the accident review packet declaring the accident to be non-chargeable.

Plaintiff presented the packet to Major Matson, but he would not accept it because it did not contain any photos. Major Matson directed Plaintiff to obtain the pictures of the object Officer Olascoagoa hit and the damage it caused to his vehicle. After another request by Major Matson, Plaintiff provided him with the photos. Based on all of the information, Major Matson believed the accident was avoidable. Although Lieutenant Jason Armstrong, an African-American male, and Plaintiff had already signed off on the report, Matson returned the packet to Armstrong and told him that he and Plaintiff should reconsider their determination in light of the photos of the accident.

Armstrong reported this to Plaintiff who responded that she was not going to change her non-chargeable determination. Armstrong did not change his mind either and testified that he believed the accident could go either way, but seeing that the three administrative sergeants had determined it to be non-chargeable, he also agreed to sign off. Matson spoke with the three sergeants who reported that they were not given photos of the accident to review but rather had based their determination solely on Plaintiff's representations

AO 72A
(Rev.8/82)

regarding the incident. Matson took the accident review packet and showed it to three additional independent reviewing officers who all concluded that Officer Olascoagoa's accident was chargeable. *Id.* at 18.

Based on all of Plaintiff's previous performances issues, as well as the violation of Standing Order #31, Matson decided to meet with Chief Hobbs to determine what discipline Plaintiff would receive for her role in the Officer Olascoagoa accident investigation. The three administrative sergeants were giving a written warning for signing off on the accident review packet without having reviewed documentation or pictures concerning the accident. Armstrong did not receive any discipline for his role in the investigation. Given that Plaintiff had been explicitly warned that any further infractions could lead to her termination, Chief Hobbs and Major Matson believed they could terminate Plaintiff, but considering her tenure with the department, they decided to issue her a "Last Chance Agreement." *Id.* at 19.

Major Matson met with Plaintiff on August 13, 2012, to present her with the Last Chance Agreement. Plaintiff refused to sign the Agreement, left the meeting, and told several other subordinate officers that she would not sign the Agreement. Chief Hobbs also met with Plaintiff in an attempt to get her to sign the Agreement and save her job. *Id.* at 23. She still refused. Hobbs then gave Plaintiff additional time to think about it and communicated with Plaintiff's attorney in an attempt to modify the Agreement to suit Plaintiff's concerns. Even after Hobbs modified the Agreement, Plaintiff still refused to

5

sign it, and Hobbs recommended her termination to Parker, the City Manager. Parker signed off on Hobbs's recommendation, making Plaintiff's termination effective September 7, 2012. Parker also scheduled an appeal hearing for Plaintiff's termination. Lieutenant Armstrong was promoted to Acting Captain following Plaintiff's termination.

Plaintiff testified that Matson presented the Last Chance Agreement on pink paper and told Plaintiff he "thought she would like the pink paper, since you're a girl and that's your favorite color." Plaintiff also testified that on a previous occasion, Matson had denied Plaintiff's request to move a female officer to her shift and stated "there's too much estrogen on your shift." Plaintiff also stated that in response to an off-color photograph Plaintiff had sent to Matson, Matson made a reference to Plaintiff as "bitchy."

In his Report and Recommendation, with respect to the *prima facie* case, Magistrate Vineyard found that Plaintiff was a member of a protected class, and over the objection of Defendants, he also found that she was qualified for the job, had suffered an adverse employment action through her termination, and had been replaced by a person outside her protected class. *Id.* at 31-36.

The Magistrate Judge then found that Defendants had offered a legitimate nondiscriminatory reason for Plaintiff's termination based on her refusal to sign the Last Chance Agreement, as well as her entire disciplinary history and performance problems. *Id.* at 37-38. In an attempt to show pretext, Plaintiff first argued that she had not violated any of the policies that resulted in the previous disciplinary actions, particularly with respect to

her conversation with the officer of the Georgia Bureau of Investigation and the Officer Olascoagoa accident investigation. *Id.* at 40-41. The Magistrate Judge found, however, that Plaintiff's mere disagreement with the department's decision to discipline her was not sufficient to show pretext. Plaintiff had not presented any evidence that showed Major Matson did not have a sincere belief that she had violated the policies or that any discriminatory animus drove his decisions.

Plaintiff argued that other officers who had improperly conducted an accident investigation were not placed on a Last Chance Agreement. She avers that Lieutenant Hiers also had problems with an accident investigation panel, but was only given verbal counseling. However, the Magistrate Judge noted that the circumstances of Hiers's infraction were not similar to Plaintiff's. *Id.* at 41 n.33. Moreover, none of the other comparators offered by Plaintiff had anywhere near the disciplinary history that she did, nor were they individuals of Plaintiff's rank of Captain, for whom the department might have heightened expectations. *Id.* at 41-42.

As the Eleventh Circuit had found on innumerable occasions, it is not enough to question the wisdom of an employer's decision, rather, a plaintiff must also show that discrimination was the driving force behind the decision. *Id.* at 42-45. While the Magistrate Judge recognized the stray comments Plaintiff alleged Matson made concerning her gender, he concluded these remarks did not raise a general issue of material fact on pretext because those comments were not made in the context of the decision to terminate Plaintiff and

7

because it was Chief Hobbs and not Major Matson who made the ultimate determination to issue Plaintiff a Last Chance Agreement, and Parker who was the final decisionmaker on the decision to terminate. *Id.* at 44-45 n.34. The Magistrate Judge also found that Plaintiff had not presented any evidence to show that Chief Hobbs was a "cat's paw" for Major Matson such that any discriminatory animus allegedly held by Matson could be imputed to decisions made by Hobbs. *Id.* at 45. Finally, the Magistrate Judge rejected Plaintiff's bald argument that because Armstrong, an African-American male, replaced her, Defendants' decision was pretext for discrimination. *Id.* at 47-48. In sum, the Magistrate Judge recommended that the court grant Defendants' motion for summary judgment.

## II. Discussion

Defendants object to the Report and Recommendation arguing that the Magistrate Judge improperly found that Defendants admitted or failed to properly dispute some of Plaintiff's Statement of Additional Material Facts and also incorrectly found that Plaintiff was subject to an adverse employment action through termination. Defendants contend that because Plaintiff requested in her appeal hearing that she be permitted to resign, she could not have suffered an adverse employment action.

Defendants complain that the Report and Recommendation identified by number certain of Plaintiff's statements as being undisputed. Defendants, however, point to no particular fact found by the Magistrate Judge that they believe is improper or that they assert had been disputed by them in briefing of their motion for summary judgment. Given those

8

circumstances, the court finds it unnecessary to review at least 52 separate statements of fact on which Defendants have made no particular argument as to why the Magistrate Judge's conclusion that those statements were at least partially admitted is erroneous.

Similarly, the court finds it unnecessary to further parse any arguments concerning whether Plaintiff suffered an adverse employment action. Defendants argue that Plaintiff testified in her deposition that she had resigned from the department and requested that she be permitted to resign in lieu of termination at her appeal hearing. Nonetheless, the Magistrate Judge determined that Plaintiff was terminated as of August 30, 2012, when Parker issued his letter to her. As the Magistrate Judge noted, any rulings made with respect to the *prima facie* case fall away when the court goes onto consider an employer's legitimate non-discriminatory reason for termination and a plaintiff's allegations of pretext. *See Morrison v. City of Bainbridge*, 432 F. App'x 877, 881 n.2 (11th Cir. 2011) ("[W]hen an employer has offered a legitimate, nondiscriminatory reason for an [alleged adverse employment action], whether a plaintiff made out a *prima facie* case is almost always irrelevant in considering a motion for summary judgment."). Because the Magistrate Judge went onto consider Defendants' legitimate nondiscriminatory reason for termination and rejected Plaintiff's pretext arguments, the court finds any argument concerning Plaintiff's *prima facie* case to be moot.

Plaintiff objects to the Report and Recommendation of the Magistrate Judge on the following bases: (1) the Magistrate Judge improperly limited his consideration of the

9

adverse employment action she suffered to her termination and did not consider that the presentation of the Last Chance Agreement was also an adverse employment action; (2) Defendants' reasons for resorting to the Last Chance Agreement were pretextual because she did not violate departmental policy with respect to General Order #31 or the accident investigation, (3) she did proffer comparators who were treated more favorable than she was, and (4) the Report and Recommendation failed to consider the discriminatory comments Plaintiff alleges Matson made.

As the court found above, whatever rulings the Magistrate Judge made with respect to Plaintiff's *prima facie* case are moot now that the Magistrate Judge further addressed Defendants' legitimate non-discriminatory reasons for their actions and Plaintiff's arguments of pretext. Moreover, the court finds that the Magistrate Judge did not limit his consideration of Plaintiff's arguments to her termination. The court reviewed all of Plaintiff's arguments that she did not violate departmental policies in the manner alleged by Defendants. The court's independent review also shows that Plaintiff has not made any argument from which a reasonable jury could conclude that Hobbs's decision to present Plaintiff with a Last Chance Agreement was somehow discriminatory. Plaintiff's disciplinary history was not limited to the conversation she had with the officer from the Georgia Bureau of Investigation and the accident investigation. Plaintiff was given another chance time and time again after warnings that any further infractions might result in further discipline or termination. Plaintiff has offered no evidence to show that any officer of her

rank with the same type of disciplinary history that she had was not presented with a Last Chance Agreement.

Plaintiff's argument that if she "had not been offered a last chance letter, she would not have been terminated and her employment would have continued," *see* Objections, Docket Entry [57], at 3 n.1, is illogical. This was not a binary choice of Last Chance Agreement or no discipline. Rather, the evidence clearly shows that Matson and Hobbs believed that Plaintiff could have been terminated as a result of the accident investigation mishaps, but in light of her tenure with the department, they wanted to give her one more chance. If they had not made the decision to present her with a Last Chance Agreement, she would have been terminated immediately. Whether one looks at the adverse employment action as her termination for refusal to sign the Last Chance Agreement or the presentation of the Last Chance Agreement, itself, Plaintiff has not presented sufficient evidence to rebut Defendants' legitimate nondiscriminatory reason for their adverse actions.

In her objections, Plaintiff recounts her arguments for why she believes she did not violate departmental policies. However, as the Magistrate Judge thoroughly considered, it is not sufficient for Plaintiff merely to argue that she disagrees with the decisions of the department, she must also present sufficient evidence from which a reasonable jury could find that not only was the department wrong in the decisions it reached, but it reached those decisions based on discrimination. Plaintiff failed to do so. Contrary to Plaintiff's contentions, the Magistrate Judge considered Plaintiff's argument that other officers did not

follow departmental procedure in investigating accidents of fellow officers and her contention that those officers were not punished. *See* Report and Recommendation, at 22-23 n.22. Even considering all of that, however, he concluded – and the court agrees – that Plaintiff cannot show that Defendants' decisions were pretext for discrimination.

As the court found above, although Plaintiff asserts that similarly situated comparators were treated more favorably than she was, in fact, she has not presented any comparator who is similarly situated to her in terms of rank or disciplinary history. Armstrong is not a comparator because at the time of the Officer Olascoagoa accident, he was not a captain. While Captain Harris received a lesser punishment than Plaintiff when he also came to a different conclusion than Matson as to whether an accident was chargeable or not, Plaintiff was not punished merely for the fact that she disagreed with Matson. Rather, Plaintiff was punished because she personally failed to review the accident photographs before reaching a conclusion as to whether the accident was chargeable and because Matson believed – with some reason – that she improperly attempted to influence the decision of the review panel by presenting them with her fait accompli decision that the accident was nonchargeable without any accompanying documentation or photographs. Furthermore, there is no evidence in the record that Harris had a disciplinary history as extensive as Plaintiff's.

Finally, Plaintiff argues that the Magistrate Judge failed to consider the discriminatory comments allegedly made by Major Matson. This, of course, is incorrect.

12

The Magistrate Judge did consider those comments, but found they were not a sufficient basis upon which Plaintiff could make a showing of pretext. Although Plaintiff now argues that Hobbs was the "cat's paw" of Matson, she makes nothing close to the evidentiary record she would need to in order to justify such a finding. Hobbs, himself, testified that although she could have been terminated, he believed her to be a "good captain" and he "desperately wanted to try to keep her," *see* Report and Recommendation, at 19-20 n.21. He did not want to fire her, so he chose to offer the Last Chance Agreement. Furthermore, Plaintiff does not address the fact that after Hobbs signed off on her termination, his recommendation was presented to Parker for a final determination. There is no evidence in the record that Parker could be Matson's "cat's paw." For all of these reasons, the court ADOPTS the Report and Recommendation of the Magistrate Judge [54] as the ORDER of the court. The court GRANTS Defendants' motion for summary judgment [37].

### III. Conclusion

The court GRANTS Defendants' motion for summary judgment [37]. The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiff's complaint.

**IT IS SO ORDERED** this 2nd day of March, 2015.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

13